**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**TODD EDWARD EDMONDS**                                                   **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 3:06CV-P301-H**

**JOHN D. REES** *et al.*                                                      **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on Defendants Barnard and Sanderlin's motion for summary judgment (DN 22), Defendants Holden and Everson's motion for summary judgment (DN 27), Defendant McGuire's motion for summary judgment (DN 28), Plaintiff's motion to compel (DN 29), Plaintiff's motions to strike Defendants' motions for summary judgment (DNs 31 & 33), and Plaintiff's motions for inclusion of documents in the record (DNs 38-41). The Court will address the motions in the most logical and efficient order possible.

### I. Factual Background

The facts underlying Plaintiff's claims are fully recounted in this Court's October 13, 2006, Memorandum Opinion (DN 6 at 1-7), and are incorporated herein. To briefly summarize, Plaintiff, Todd Edward Edmonds, is a convicted inmate serving a lengthy prison sentence with the Kentucky Department of Corrections ("KDOC"). For some time, Plaintiff has been infected with the hepatitis C virus ("HCV"). Prior to entering the KDOC, Plaintiff was incarcerated at the Louisville Metro Department of Corrections. While there, Plaintiff was under the care of Dr. Bennet Cecil, the corporate medical director of the Hepatitis Treatment Centers in Louisville, Kentucky. Dr. Cecil initially attempted to treat Plaintiff with pegylated interferon plus ribavirin, but Plaintiff was largely non-responsive to this treatment regime. Dr. Cecil then changed the treatment regime to daily injections of infergen 15 mcg. plus ribavirin. The new regime was

effective and lowered Plaintiff's HCV RNA viral load to an undetectable level by October 2004. At that time, Dr. Cecil opined that if Plaintiff stayed on the treatment regime until April 15, 2005, he would have an 80% chance of staying negative for the virus. However, at the end of October 2004, Plaintiff was turned over to the KDOC and placed at the Roederer Correctional Complex ("RCC"). The plaintiff was incarcerated at RCC from October 28, 2004, to December 8, 2004. He was then transferred to the Kentucky State Reformatory ("KSR"), where he was incarcerated from December 8, 2004, to March 24, 2006. He was then transferred to Eastern Kentucky Correctional Complex ("EKCC"). On July 12, 2007, Plaintiff was transferred from EKCC to the Luther Luckett Correctional Complex, where he currently resides.

Although it appears undisputed that Plaintiff was responding to Dr. Cecil's treatment regime, the KDOC refused to continue treatment with daily infergen injections because that treatment is not provided under the KDOC's HCV policy[1] or to treat Plaintiff with the KDOC's standardized HCV treatment, interferon-based antiviral therapy, because Plaintiff had previously not responded to that treatment. Accordingly, since entering the KDOC in October 2004, Plaintiff has not received any medically recognized treatment to lower his viral levels and has been refused a liver biopsy to determine the extent his HCV has damaged his liver.

## II. Procedural History

Plaintiff filed the instant *pro se* action on or about June 16, 2006, pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they denied him treatment for his HCV and allowed him to be

---

[1]Although not provided under the KDOC's policy, infergen is an FDA-approved drug that is indicated for the treatment of chronic HCV infection, particularly in individuals who have failed to respond to the standard interferon-based treatment. *See, e.g.*, http://www.infergen.com.

exposed to toxic paint fumes between May 2005 and July 2005 while he was incarcerated at KSR. The Court conducted an initial review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). On initial review the Court allowed the following claims to proceed for further development: (1) the Eighth Amendment, individual-capacity claims for damages against Defendants Rees, Barnard, Sanderlin, Holden, Crall, Everson, McGuire, and Haas; and (2) the Eighth Amendment, official-capacity claims for injunctive relief in the form of treatment as against Defendants Rees, Sanderlin, Everson, and Haas.

All of the remaining Defendants except Defendant Crall waived service and filed answers to the complaint. Shortly thereafter, Defendants Holden, Rees, Everson, McGuire, and Haas filed a joint motion for summary judgment (DN 15). The same Defendants also filed a motion for a protective order seeking to be relieved from having to comply with Plaintiff's outstanding discovery requests until after a decision on summary judgment (DN 16) and a motion to suspend the deadlines in the Court's Scheduling Order (DN 17). Because Defendants' summary judgment motion dealt solely with procedural issues related to whether Plaintiff had properly exhausted his administrative remedies prior to filing suit, the Court granted both the motion for protective order (DN 24) and motion to suspend the deadlines (DN 23). Specifically, the Court ordered,

> The defendants shall not be required to respond to any discovery prior to the Court entering its order concerning the motion for summary judgment. If the case survives the motion for summary judgment, the defendants shall have thirty days from the entry of the order ruling on the motion for summary judgment in which to respond to discovery requests that are served prior to that date.

(DN 24).

Before the summary judgment motion was decided, however, the United States Supreme Court issued its opinion in *Jones v. Bock*, -- U.S.--, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* opinion overruled much of the Sixth Circuit's precedent regarding exhaustion under the Prison Litigation Reform Act ("PLRA").  The Supreme Court concluded that the Sixth Circuit's requirement that prisoners identify each defendant named in a lawsuit in their grievances exceeded the requirements of the PLRA.  The Court concluded that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievance." The Court explained that the district court must look at the requirements of the grievance procedure to determine whether any particular grievance was properly filed.  If the grievance procedures do not require the prisoner to name each defendant, then courts should not judicially impose such a requirement.  The Supreme Court also held that the Sixth Circuit's total exhaustion requirement was an erroneous interpretation of the PLRA.  The Court explained that when faced with a complaint that presents both exhausted and unexhausted claims, a court should proceed with the exhausted claims and dismiss the unexhausted ones at the appropriate time (usually on either a motion to dismiss or motion for summary judgment).

Defendants wisely recognized that the *Jones* decision dealt a fatal blow to their pending summary judgment motion and withdrew the motion (DN 26).  Defendants Everson and Holden immediately filed a replacement motion seeking summary judgment (DN 27).[2]  Defendants Rees, Everson, and Haas, however, indicated that they were in the process of gathering information to file a motion for summary judgment on the merits and would do so later (DN 26).  Plaintiff then

---

[2]Defendant Everson sought only partial summary judgment in this motion based on Plaintiff's claim related to Everson's service on the grievance committee.  Everson did not address Plaintiff's claims related to his direct medical treatment of Plaintiff in this motion.

filed a motion to compel Defendants to respond to his outstanding discovery requests (DN 29). Several months later, on August 2, 2007, Defendants Rees, Everson, and Haas moved for summary judgment (DN 43). Their summary judgment motion is directed entirely at the merits of Plaintiff's claims and relies on numerous affidavits and supporting documents.

The Court will now address the pending motions.

### III. Plaintiff's Motions for Inclusion

Plaintiff has filed four separate motions seeking the inclusion of various records and affidavits into the record (DNs 38-41). Defendants have not objected to any of the motions. The Court has reviewed the affidavits and documents. For the most part, they appear to be relevant to Plaintiff's causes of action against Defendants and the pending motions for summary judgment. Accordingly, the Court will grant the motions. The documents and affidavits shall be part of the record, and the Court will consider them to the extent relevant in adjudicating the pending summary judgment motions.

### IV. Plaintiff's Motion to Compel

Plaintiff has filed a motion to compel Defendants to respond to his outstanding discovery requests. As noted above, this Court previously entered a protective order relieving Defendants from having to respond to Plaintiff's requests until after the Court ruled on the pending summary judgment motion (DN 24). The Court entered that Order because the summary judgment motion pending at that time related solely to the discreet procedural issue of whether Plaintiff properly exhausted his administrative remedies prior to filing suit. As such, the Court concluded that it would be a waste of the parties' and the Court's time to delve into extensive merits discovery prior to a resolution of the procedural issues. In the wake of *Jones*, Defendants withdrew their

procedurally-based summary judgment motion. Several Defendants have subsequently filed summary judgment motions that primarily attack the merits of Plaintiff's claims. So long as the discovery requests are relevant to the issues upon which Defendants now seek summary judgment, it would be patently unfair to make Plaintiff respond to Defendants' summary judgment motions without the benefit of discovery that Plaintiff propounded *before* Defendants filed the most recent motions for summary judgment. Thus, the Court has examined the relevancy of Plaintiff's outstanding discovery requests in relation to each Defendant that has moved for summary judgment.

**A.     Defendant Lisa Crall**. Plaintiff's motion to compel seeks to compel Defendant Crall to answer interrogatories and respond to requests for production of documents. However, upon review of the docket sheet, the Court has discovered that the Justice and Public Safety Cabinet did not return a waiver of service for Defendant Crall, that she has not been served, and has not entered an appearance in this action. As such, she is not properly before the Court, and the Court cannot compel her to answer Plaintiff's outstanding discovery requests.

The Court is uncertain whether the Justice and Public Safety Cabinet's failure to return a waiver of service for Defendant Crall was an oversight. Accordingly, by separate order, the Court will direct the Justice and Public Safety Cabinet to notify it whether its failure to waive service for Defendant Crall was an oversight. To the extent that it was an oversight, the Justice and Public Safety Cabinet will be directed to file a waiver of service and answer with the Court. Based on experience, the Court is aware that when the Justice and Public Safety Cabinet intentionally does not return a waiver of service for a defendant, it is most likely because the defendant is no longer employed by the KDOC. Thus, in the event the Justice and Public Safety

Cabinet intentionally omitted Defendant Crall from its waiver of service list, it will be ordered to state whether she is still employed by the KDOC, and, if not, to file under seal an address where she can be served. After Defendant Crall has been served with the complaint and Plaintiff's discovery requests, after the time for a response has passed, and after having satisfied the meet and confer requirements of Fed. R. Civ. P. 37(a)(2)(B) and LR 37.1, Plaintiff may renew his request to compel as it relates to Defendant Crall.

**B.     Defendants Everson, Rees, and Haas**. Defendants Everson, Rees, and Haas have moved for summary judgment attacking the substantive merits of Plaintiff's claims (DN 43). Indeed, in response to Plaintiff's motion to compel, these Defendants stated that they had not yet filed their replacement motion for summary judgment "because medical testimony is being obtained to support the motion." Plaintiff's discovery requests were propounded on these Defendants long before the instant summary judgment motion was filed. However, because of the Court's prior Order Defendants were not required to answer them. As stated above, however, the prior Order was entered because discovery was unnecessary to resolve the procedural issues. The basis on which these Defendants now seek summary judgment has changed substantially, and for the most part, Plaintiff's discovery requests appear relevant to the issues upon which these Defendants seek summary judgment. As such, Defendants Everson, Rees, and Haas shall be required to respond to the outstanding discovery requests to the extent that they seek relevant, non-privileged information before Plaintiff is required to respond to their pending motion for summary judgment. After receiving the discovery responses, Plaintiff will be required to either file a response to the motion for summary judgment or file a motion

7

pursuant to Fed. R. Civ. P. 56(f)[3] explaining why he needs additional discovery to adequately respond to the summary judgment motion and specifically what additional discovery he seeks.

**C.     Defendants Holden and McGuire.**  The Court has reviewed Plaintiff's discovery requests as related to Defendants Holden and McGuire.  Based on its review, the Court concludes that none of Plaintiff's pending discovery requests relate to the issues upon which these Defendants seek summary judgment, and Plaintiff has not filed an affidavit pursuant to Fed. R. Civ. P. 56(f) indicating that he needs additional discovery to respond to their motions for summary judgment.  As such, the Court will deny Plaintiff's motion to compel as it relates to Defendants Holden and McGuire and proceed to adjudicate their motions for summary judgment.

**D.  Defendants Barnard and Sanderlin.**  It does not appear that Plaintiff has served any discovery requests on Defendants Barnard and Sanderlin, nor has he filed an affidavit pursuant to Fed. R. Civ. P. 56(f) indicating that he needs discovery from these Defendants to respond to their motions for summary judgment.  Accordingly, the Court will proceed to adjudicate their motions for summary judgment.

### V. Plaintiff's Motions to Strike Defendants' Motions for Summary Judgment

Plaintiff has filed two motions seeking to strike Defendants' motions for summary judgment (DNs 31 & 33).  Plaintiff argues that the motions are mere delay tactics and that Defendants waived several of the defenses asserted in the motions because they were not included in their first summary judgment motion, which has now been withdrawn.  The Court

---

[3]The Court finds that Plaintiff was not required to file a Fed. R. Civ. P. 56(f) motion as part of his motion to compel because his initial discovery requests were propounded on Defendants in December 2006, almost eight full months *before* Defendants filed the instant motion for summary judgment.

concludes that Defendants' summary judgment motions were made in good faith. Moreover, Defendants raised the required defenses in their answers, which is all that is required by Fed. R. Civ. P. 12. Accordingly, there is no basis upon which to strike the pending motions for summary judgment, and Plaintiff's motions to strike them will be denied.

### VI. Motions for Summary Judgment

**A.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* at 325.

Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his or her case with respect to which he or she bears the burden of proof. *Id.* at 322. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R.

Civ. P. 56(e), a verified complaint or additional affidavit . . . satisfies the burden of the nonmovant to respond." *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.      Defendants Sanderlin, Barnard, and Everson.**

Plaintiff alleges the following with respect to Defendants Sanderlin, Barnard, and Everson:

> Sarah Sanderlin, R.N.: She is one of the three committee members who responded to the plaintiff's grievances and refused him treatment for his liver illness, despite letters and reports from Dr. Cecil, court orders, lab results etc . . . These were submitted with the grievances to show that the plaintiff need[s] treatment, and that he was receiving treatment when leaving the jail to come to prison, Defendant Sanderlin violated the plaintiff's Eighth and Fourteenth Amendment rights, when she showed deliberate indifference to his serious medical needs.
>
> Martha Barnard, R.N.: She is one of the three committee members who responded to the plaintiff's grievances and refused him treatment for his liver illness, despite letters and reports from Dr. Cecil, court orders, lab results etc . . . These were submitted with the grievances to show that the plaintiff need[s] treatment, and that he was receiving treatment when leaving the jail to come to prison. . . . Defendant Barnard violated the plaintiff's Eighth and Fourteenth Amendment rights, when she showed deliberate indifference to his serious medical needs.
>
> Dr. Ron Everson: He is one of the three committee members who responded to the plaintiff's grievances and refused him treatment for his liver illness despite letters and requests from Dr. Cecil, court orders, lab results, etc. These were submitted to the grievance committee to show that the plaintiff need[s] treatment and that he was receiving treatment when leaving the jail to come to prison. Dr. Everson also faxed false information to Dr. Haas on 4/18/06 concerning the plaintiff's mental state and weight. As a result, the information was used as a reason why the plaintiff was not eligible for treatment. Defendant Everson violated the plaintiff's Eighth and Fourteenth Amendment rights, when he showed deliberate indifference to his serious medical needs.

(DN 1).

In their summary judgment motion, Defendants Sanderlin and Barnard allege that Plaintiff's claims against them "are based solely on their participation on the Health Care Grievance Committee and their denial of administrative grievance #05-580." Plaintiff does not dispute this fact. As such, Defendants claim that Plaintiff does not have viable claims against them. Defendant Everson acknowledges that Plaintiff's claims against him arise out of both his treatment of Plaintiff and the denial of Plaintiff's grievances. Defendant Everson seeks summary judgment on the portion of Plaintiff's claims that arise out of his membership on the grievance committee.

There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 Fed. Appx. 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. Plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See e.g.*, *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (reversing denial of summary judgment to prison officials whose only involvement was the denial of administrative remedies); *Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Because Plaintiff's only remaining allegations against Defendants Sanderlin and Barnard[4] arise out of their decision to deny his administrative grievances, these Defendants are entitled to summary judgment. Likewise, Defendant Everson is entitled to partial summary judgment to the extent Plaintiff's claims against him are based on his

---

[4]Plaintiff's complaint also alleged retaliation claims against Defendant Barnard, but those claims were dismissed on initial screening.

service on the grievance committee. Plaintiff's claim against Dr. Everson based on the medical treatment he provided and/or refused to provide Plaintiff, however, is not subject to summary judgment at this time.

### C.     Defendants McGuire and Holden

Plaintiff alleges the following with respect to Defendant McGuire:

> Paige McGuire (Deputy Warden of K.S.R.): She oversaw medical operations there. She was aware of the plaintiff's medical condition and the treatment the plaintiff was taking for his liver illness while in jail, through court orders, letters and reports from Dr. Cecil, grievances, etc. One of the court orders was in fact sent to her and still repeatedly she refused the plaintiff treatment. She was aware that the toxic paint was dangerous and could cause health problems.

(DN 1). In her motion for summary judgment, Defendant McGuire avers that:

> In my position as Deputy Warden, I previously had administrative oversight of the medical department at KSR. While I currently supervise security, during the time of the issues described by Mr. Edmonds in his suit, I was responsible for supervising fiscal matters, handling personnel issues, and facilitating the operation of the medical department.
>
> At no time did I make medical decisions. Medical staff (doctors and nurses) provide medical treatment and make medical decisions regarding inmate medical care at KSR. I do not have the medical training necessary to make medical treatment decisions and have no authority to order specific medical treatment. I made no medical treatment decisions concerning Todd Edmonds, #174240, at any time.
>
> During the time that Todd Edmonds was at KSR, I did not handle the assignment of inmates to specific dorms. I did not supervise the Engineering Department or make decisions concerning what dorm areas were painted or paint was used.

(DN 28, Part 2). Plaintiff has not effectively disputed these facts.

With respect to Defendant Holden, Plaintiff alleges:

> Defendant Holden, Deputy Warden at RCC, oversaw medical operations there; she was aware of the plaintiff's medical condition and the medication he was receiving while in jail. Through court orders, letters and reports from Dr. Cecil, letters from the plaintiff, and speaking to him in person, phone call's from the

>plaintiff's family and other outside source's and grievance. She violated the plaintiff's Eighth and Fourteenth Amendment rights when she showed deliberate indifference to his serious medical needs.

(DN 1). In her motion for summary judgment, Defendant Holden avers that:

>I was formerly a deputy warden employed at Roederer Correctional Complex (RCC). In my position as deputy warden, I had administrative oversight of the medical department at RCC. I was responsible for handling personnel issues, and facilitating the administrative operation of the medical department.

>Medical staff (doctors and nurses) provided medical treatment and made medical treatment decisions regarding inmate medical care at RCC. I did not have the medical training necessary to make medical treatment decisions and no authority to order specific medical treatment.

(DN 27, Part 3). Plaintiff has not disputed these facts.

Section 1983 liability must be based on more than respondeat superior or the right to control employees. *Shehee*, 199 F.3d at 300; *see also Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). "Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *K.F. v. Jefferson County Sch. Dist.*, No. 3:05CV-246-H, 2007 U.S. Dist. LEXIS 30707 (W.D. Ky. Apr. 25, 2007) (quoting *Shehee*, 199 F.3d at 300); *see also Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) ("Even assuming the allegations in [plaintiff's] complaint are true, she has not averred that 'any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment' . . . . At best, she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983.").

It is undisputed that Defendants McGuire and Holden were aware of Plaintiff's medical condition and requests. It is also undisputed, however, that Defendants McGuire and Holden did

not have the authority, nor did they refuse Plaintiff any medical treatment for his condition. Defendants McGuire and Holden did not make any medical decisions relative to what treatment Plaintiff did or did not receive while housed at their respective institutions. Both RCC and KSR had medical staff to provide necessary medical care to inmates, and Plaintiff was seen by medical staff during his incarceration at KSR and RCC. Additionally, Defendant McGuire was not involved in the decision to paint Plaintiff's dorm and did not deny Plaintiff a transfer to another part of the prison to escape the paint fumes. Standing alone, Defendants' knowledge of Plaintiff's condition and requests is insufficient to establish liability against them under § 1983. Accordingly, Defendants McGuire and Holden are entitled to summary judgment.

The Court will enter separate Orders consistent with this Memorandum Opinion.

Date:

cc:    Plaintiff, *pro se*
        Counsel of Record
4412.008