### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

**TODD EDWARD EDMONDS**                                                                       **PLAINTIFF**

**v.**                                                                      **CIVIL ACTION NO. 3:06-CV-P301-H**

**JOHN D. REES, et al.**                                                                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff has moved this Court to reconsider its ruling granting summary judgment in favor of Defendants John Rees, Ron Everson, and Dr. Scott Haas (DN 84). After careful consideration of Plaintiff's motion (DN 84) and Defendants' response thereto (DN 85), as well as the entire record, the Court will deny the motion for the following reasons.

### I. BACKGROUND

This Court granted Defendants' motion for summary judgment because Plaintiff only had established a disagreement with Defendants' decision not to treat his Hepatitis C (HCV) with antiviral therapy. The Court found that it was not an Eighth Amendment violation for Defendants not to provide antiviral therapy to Plaintiff based on his normal liver functioning, the fact that he previously had not responded to antiviral therapy, and the fact that antiviral therapy was contraindicated based on Plaintiff's psychiatric history. The Court also found that Defendants were entitled to summary judgment on Plaintiff's claim that they had been deliberately indifferent when they exposed him to paint fumes, as the only support for Plaintiff's claim in this regard was his speculation.

Plaintiff states as reasons for reconsideration that the Court incorrectly concluded that the crux of his complaint was his desire that Defendants should have continued him on the antiviral therapy prescribed by Dr. Cecil. He states that, in actuality, while he would have liked

to continue on Dr. Cecil's regime, he would have accepted the standard interferon and ribavirin treatment offered by the Kentucky Department of Corrections (DOC). He also argues that it was incorrect to say that he had been "treated" with de-ironing because de-ironing does nothing to stop or slow down the progression of the virus. He asserts that his ALT levels were not in the normal range. He again asserts that Defendants did not follow the DOC Hepatitis Management Plan when they failed to offer him anti-depressants and that his swallowing razor blades in October 2004 was not done purposely and had nothing to do with side effects from the medication. He asks how Dr. Shedlofsky determined that he was a non-responder to the therapy when he admitted that he had no way of knowing whether Plaintiff would have responded after 24 weeks. Finally, he asserts that Defendants were deliberately indifferent regarding his exposure to "toxic" paint because he was never tested to determine whether he was injured by that exposure.

In response, Defendants Rees, Everson, and Haas assert that Plaintiff continues to evince a difference of opinion with his medical treatment. They assert that it is immaterial that Plaintiff was willing to have the pegylated interferon and ribavirin therapy if he could not have the Infergen therapy because Dr. Shedlofsky had opined that Plaintiff should not continue with any interferon-based therapy because the risks outweighed the benefits. They also state that they never asserted that Plaintiff was de-ironed to eradicate his Hepatitis C but as an attempt to decrease liver fibrosis, which may be caused by Hepatitis C. They further state that his argument that his ALT levels were not normal as indicated on the April 2006 form relies on ALT levels available after that date. They state that the form states the tests that were considered; however, they assert that even if an error were made, the outcome would be the same because the Hepatitis

expert does not believe that Plaintiff is an appropriate candidate for other reasons.

## II. ANALYSIS

**A.     Effect of the notice of appeal**

First, the Court must consider whether it has jurisdiction to decide Plaintiff's motion. Plaintiff filed a notice of appeal from the Court's grant of summary judgment to some, but not all, of the defendants.

Under the final judgment rule embodied in 28 U.S.C. § 1291, parties may appeal only the "final decisions of the district courts." A final judgment under § 1291 is "a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (internal quotation omitted). By requiring parties to "raise all claims of error in a single appeal following final judgment on the merits," § 1291 prevents piecemeal litigation and promotes judicial efficiency. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

Because they do not dispose of all claims, orders granting partial summary judgment are not final appealable orders. *Moody v. Kapica*, 548 F.2d 133 (6th Cir. 1976) (per curiam); *Gabbard v. Rose*, 330 F.2d 705, 706 (6th Cir. 1964). A district court is not divested of jurisdiction by an appeal from a clearly nonappealable order. *Cochran v. Birkel*, 651 F.2d 1219, 1222-23 (6th Cir. 1981). Thus, the Court concludes that it has not been divested of jurisdiction by Plaintiff's notice of appeal from the Court's non-final judgment.

**B.     Whether reconsideration is warranted**

Rule 59(e) may be used by a party who seeks to alter or amend a judgment. However, Rule 59(e) applies only to final judgments. *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d

804, 832-33 (6th Cir. 1999) (noting that "[a] Rule 59(e) motion relates to the underlying *final* judgment . . . "). And, by its very terms, Rule 60(b) provides relief from *final* judgments or orders. *See* ADVISORY COMMITTEE NOTES to Rule 60 ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders, or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Thus, both Rule 59 and Rule 60 are only applicable to final orders or judgments. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). Because it did not dispose of all of the claims or parties, the Court's March 19, 2008, order is an interlocutory order, not a final order or judgment.

The Federal Rules of Civil Procedure do not specifically address reconsideration of interlocutory orders. The Sixth Circuit has recognized, however, that a district court may reconsider an interlocutory order under its common law powers and under Rule 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004) ("Although we agree that the authority for hearing such motions has a common law basis, we find additional support in Federal Rule of Civil Procedure 54(b).") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d at 1469-70, which approved using Rule 54(b) as a proper procedural vehicle for bringing motions to reconsider interlocutory orders). Rule 54(b) provides, in part, that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Such a motion to reconsider may be "reviewed by the district court, on

motion or *sua sponte,* at any time prior to the entry of a final judgment." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d at 1472. Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice. *Rodriguez*, 89 F. App'x. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

None of these justifications exist in the instant case. The plaintiff asks this Court to reconsider its prior ruling for the same reason that he pressed his claims against these defendants: his disagreement with their treatment, or, he asserts, the lack thereof, of his Hepatitis C.

First, whether he would have "accepted" the DOC antiviral treatment is irrelevant because Defendants found him ineligible for the DOC antiviral regime. Second, while not an antiviral regime, according to the evidence before the Court de-ironing was nonetheless suggested and carried out by Dr. Shedlofsky, DOC's Hepatitis expert, because of Plaintiff's Hepatitis C. The DOC Hepatitis Management Plan states, "Since excess liver iron is associated with increased fibrosis in Hepatitis C patients and iron removal tends to improve ALT values, we strongly recommend that all inmates with serum ferritins >200 be de-ironed."

Plaintiff argues that the mean of the February, April and August 2006 ALT levels is greater than 60 (62.3). According to the DOC Hepatitis plan Plaintiff attached to his motion for inclusion in the record (DN 39), the key is whether the mean of ALT values is above or below 60.

Plaintiff did not make this argument until his motion for reconsideration. The form

5

containing ALT values to which he refers is entitled Documentation of Ineligibility for HCV Evaluation, was signed by someone on behalf of Dr. Everson, and was dated April 26, 2006. As one of several reasons for ineligibility for further evaluation and possible antiviral therapy, it has a check mark next to the following: "The inmate had at least three ALT laboratory tests monitored over a two to six month period and the mean of the three ALT values were not greater than 1.5 fold normal." That form delineates that an initial ALT on "9/05" was 37, a second ALT on "11/05" was 37, and a third ALT on "2/06" was 83, with the mean of the three levels being 52.3.

Defendants note that the test results he is referring to were done after the Documentation of Ineligibility for HCV Evaluation was signed and dated, and they say that even if a mistake were made, the outcome would not change because the Hepatitis expert does not believe that Plaintiff is an appropriate candidate for treatment for other reasons and his approval is necessary after a primary care provider recommends treatment.

The HCV Evaluation Flow Sheet attached to this Evaluation has marked in the column marked "Date" and "ALT" the following:

| Date | 8-19-05 | 9-2-05 | 11-28-05 | 2-17-06 | 4/06 | 8-16-06 | 1-20-70[1] |
|------|---------|--------|----------|---------|------|---------|------------|
| ALT  | 41      | 37     | 37       | 83      | 58   | 46      | 48         |

As Plaintiff points out, the average of the three ALTs listed for February, April and

---

[1] The Court notes that this date, which would denote January 20, 1970, does not make sense chronologically. The Court further notes that if in fact this date was supposed to be January 20, 2007, it would make sense chronologically. For purposes of this discussion, the Court will assume so. However, because, as will be discussed below, the Court will no longer base its decision on ALT levels, any fact-question as to this date is immaterial to the determination of the instant motion.

August 2006 is above 60 (62.3). However, according to the Court's arithmetic, the average of the next three ALT levels (58, 46, and 48) is below 60 again.

Defendants' response is confusing to the Court because the affidavit of Dr. Shedlofsky dated May 14, 2007, averred that Plaintiff currently appears to have normal liver functioning. Dr. Shedlofsky's affidavit does not state whether he was relying on ALT levels, other liver tests, or ALT levels in conjunction with other tests to reach this conclusion. Dr. Shedlofsky's affidavit dated January 3, 2008, attached to Defendants' reply (DN 67) did not discuss liver functioning, but he again stated his belief that Plaintiff was not an appropriate candidate based on his psychiatric contra-indications and the fact that he was a previous non-responder. Dr. Haas's affidavit, also attached to that document, dated December 10, 2008, averred among other things that Plaintiff's "liver is functioning normally at this time as indicated by normal total protein and albumin levels, both of which are indicators of a liver's actual functional capacity." Additionally, the Court notes that as an attachment to Plaintiff's response to the summary-judgment motion is an October 4, 2006, letter from Defendant Rees stating that Dr. Shedlofsky reports that his recent ALT's were not more than 1.5 fold normal. Thus, there is evidence in the record to support Defendants' argument that based on Plaintiff's liver functioning Plaintiff does not require further antiviral treatment. However, because it appears to the Court that Defendants have now conceded that a mistake may have been made in calculating his liver functioning, the Court will no longer consider the ALT levels as an appropriate reason for Defendants to have denied antiviral therapy to Plaintiff.

Plaintiff again argues that Defendants did not follow the DOC Hepatitis Management Plan in not offering him anti-depressants and asserts that his swallowing razor blades was not

done purposely. In a letter from Plaintiff to Commissioner Rees, Plaintiff stated in reference to his swallowing razor blades that he had told the medical department at Roederer Correctional Complex that this incident happened in the jail during an altercation with jail guards and had nothing to do with the medication he was receiving for his Hepatitis C, which he had been on for at least six months prior to the incident without side effects. The Court is not inclined to accept Plaintiff's argument that he did not purposely swallow razor blades. Plaintiff offers no explanation, plausible or otherwise, of how he could have accidentally swallowed razor blades. Moreover, he does not dispute that he has a psychiatric history, and indeed argues that Defendants should have prescribed him anti-depressants so that he could continue on the antiviral therapy.

In its ruling on the summary-judgment motion, the Court considered Plaintiff's assertion that he should have been offered a prescription for anti-depressants so that he could undergo antiviral therapy. Plaintiff offers nothing in his motion to cause the Court to change its finding that Plaintiff only has shown a disagreement between himself (and Dr. Cecil) on one hand and Defendants on the other hand regarding his psychiatric contraindication to antiviral therapy. Dr. Cecil stated his opinion in a March 7, 2006, letter that he believed that if Plaintiff were treated by a psychiatrist with antidepressants and monitored then he would have a "very good chance of not having additional psychiatric problems related to treatment." However, in his January 3, 2008, affidavit, Dr. Shedlofsky averred:

> [Plaintiff] contends that with careful psychiatric monitoring he should be allowed treatment again. But because he has had three well documented episodes of self-inflicted injury while on interferon – including a self inflicted right leg fracture on August 20, 2003, swallowing broken glass fragments on September 23, 2003, (both while on pegylated interferon alpha 2a or Pegasys®),

> and swallowing razor blades on October 20, 2004 (while on consensus interferon or Infergen®) – I am not certain how any psychiatrist could form an opinion that interferon therapy would be safe for [Plaintiff]. Because I would interpret these episodes as suicide attempts, they would make [Plaintiff] ineligible.

In his December 10, 2007, affidavit, Dr. Scott Haas, a board-certified psychiatrist and medical director of the Kentucky Department of Corrections, averred:

> [T]reatment with interferon-based medications have the potential to result in serious psychiatric disturbances. [Plaintiff] has recently been treated with antipsychotic medication for a mental health problem and has engaged in self-harm behavior by swallowing razor blades. Those issues significantly increase the risk for psychiatric disturbance were he to be retreated with interferon-based drugs. Pegasys and Infergen are both interferon-based drugs.

Plaintiff and Dr. Cecil disagree with Dr. Shedlofsky and Dr. Haas as to whether Plaintiff could safely be treated with anti-depressants in conjunction with antiviral therapy. A mere disagreement with treatment does not rise to the level of an Eighth Amendment violation, *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also White v. Napoleon*, 897 F.2d 103, 1010 (3d Cir. 1990), and the Court sees no reason to grant Plaintiff's motion to reconsider its ruling on this point.

Plaintiff also obviously disagrees with Dr. Shedlofsky that he was a non-responder to antiviral therapy. The Court dealt with this contention in its consideration of the summary-judgment motion. As the Court noted, Plaintiff (and, apparently, Dr. Cecil) believe that the antiviral regime as prescribed by Dr. Cecil was working and should be restarted. Dr. Shedlofsky disagrees with this assessment. Where there is only a disagreement about treatment, such does not rise to an Eighth Amendment violation. *See Westlake*, 537 F.2d at 860 n.5. Nothing in Plaintiff's motion to reconsider changes the Court's finding that he has presented only a

disagreement with his treatment for Hepatitis C given Defendants' reliance on his psychiatric history and his status as a non-responder.

Finally, again Plaintiff offers nothing to show that his argument that his liver was damaged due to exposure to "toxic" paint is not purely speculative.

Plaintiff's motion to reconsider (DN 84) is **DENIED**.

Date:


cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4412.009